66 A.3d 1187

**Jean BURNS**

v.

**BECHTEL CORP., n/k/a Sequoia Ventures, Inc.**

**No. 427, Sept. Term, 2012.**

Court of Special Appeals of Maryland.

May 30, 2013.

Jennifer L. Lilly & Steven W. Smith, (Law Office of Peter G. Angelos, PC, on the brief), Baltimore, MD, for Appellant.

M. Natalie McSherry, (Kevin F. Arthur, Kramon & Graham, PA and Christopher G. Conley, Philip A. Kulinski, Evert Weathersby Houff, on the brief), Baltimore, MD, for Appellee.

Panel: ZARNOCH, MATRICCIANI and RAYMOND G. THIEME, JR. (Retired, Specially Assigned), JJ.

MATRICCIANI, J.

Appellant, Jean Burns, and her husband, Robert,[1] filed suit against Bechtel Corp.[2] in the Circuit Court for Baltimore City on November 5, 2009, alleging that Bechtel was liable for Mr. Burns' contracting mesothelioma from asbestos exposure. Bechtel moved for summary judgment, and after a hearing on the matter, the trial court granted Bechtel's motion on November 15, 2011, holding that appellant's claims were barred by the Statute of Repose codified in § 5–108 of the Courts & Judicial Proceedings Article ("CJ"), Maryland Code (1974, 2006 Repl.Vol.). Appellant voluntarily dismissed her remaining claims on April 12, 2012, and this timely appeal followed on May 8, 2012.

## QUESTIONS PRESENTED

Appellant presents the following questions, which we have rephrased to comport with our discussion:

I. Did the trial court err when it held that a general contractor was not in actual possession and control of a property, where the contractor's control was limited to the scope of its construction project?

II. Did the trial court err when it held that "improvements" as used in CJ § 5–108 include asbestos dust or fibers which are shed or emitted prior to or in the course of the affixation, application, or installation of

1. During the pendency of this suit, Mr. Burns died and Mrs. Burns remained as the sole plaintiff and appellant.

2. Bechtel Corp. became Sequoia Ventures, Inc. in 1980, but the parties use the moniker "Bechtel" for the sake of narrative convenience.

the asbestos or the product that contains asbestos to an improvement to real property?

For the reasons that follow, we answer no and affirm the judgment of the Circuit Court for Baltimore City.

### FACTUAL AND PROCEDURAL HISTORY

According to his complaint, Mr. Burns worked from 1949 to 1986 as a roving maintenance employee for the Potomac Electric Power Company ("PEPCO"). He overhauled generators, rebuilt their components, and cleaned up after other tradesmen.

During the course of Mr. Burns' employment, PEPCO hired Bechtel as its general contractor to perform construction projects at its various power stations, including three that are relevant to the present appeal: the Dickerson, Chalk Point, and Morgantown plants. Bechtel was responsible for each project's design, specifications, and construction, and the contract for work at the Dickerson and Chalk Point plants granted Bechtel "absolute control" of the projects.[3] At all three sites, Bechtel supervised the work and safety of all subcontractors and was responsible for all inspections. The designs at all three locations specified the use of asbestos insulation, to which appellant was exposed.

Mr. Burns was diagnosed with mesothelioma in August of 2009 and, joined by his wife, brought suit against Bechtel and various other parties involved in the PEPCO construction projects on November 5, 2009. Bechtel moved for summary judgment on the ground that all claims against it were barred by CJ § 5–108, which provides repose for certain defendants from claims of "wrongful death, personal injury, or injury to real or personal property resulting from the defective and unsafe condition of an improvement to real property."[4] After

---

3. Bechtel's contract for work at the Morgantown plant apparently did not include this language.

4. Section 5–108(a) creates a twenty-year repose period for general defendants, while § 5–108(b) provides a shorter, ten-year repose period for architects, professional engineers, and contractors.

hearing arguments on the matter, the trial court granted summary judgment in favor of Bechtel on November 15, 2011. Appellant timely appealed.

## DISCUSSION

### Standard of Review

Summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Md. Rule 2–501(f). Because we have the same information from the record and decide the same issues of law as the trial court, our review is *de novo* and takes the facts in a light most favorable to the non-moving party (here, appellant). *Injured Workers' Ins. Fund v. Orient Exp. Delivery Serv., Inc.*, 190 Md.App. 438, 451, 988 A.2d 1120 (2010) (citations omitted).

## I.

Appellant first argues that Bechtel was excluded from repose by CJ § 5–108(d)(2)(i) because the firm was "in actual possession and control of the property as owner, tenant, or otherwise when the injury occurred." Specifically, appellant argues that Bechtel falls under subsection (d)(2)(i) because "Bechtel, by the very terms of its contracts and specifications, retained 'complete' and 'absolute control' over all aspects of the job sites in question." Appellant's argument fails for two reasons, corresponding to the two elements of (d)(2)(i).

First, appellant's argument ignores the word "possession" and the conjunctive "and" in subsection (d)(2)(i). Taken together, the plain meaning of the words "possession," and the principle of *ejusdem generis* as applied to the examples "own-

There was no dispute that the PEPCO construction projects in this case were completed as of 1971. Thus, regardless of whether the repose period was ten or twenty years, appellant's claims were void if they accrued after 1991. Consequently, appellant argued—and argues—that her claims lie outside of § 5–108 *entirely*, making irrelevant the question of whether Bechtel is an architect, professional engineer, or contractor entitled to the shorter repose period of § 5–108(c).

er" and "tenant" listed in (d)(2)(i), imply that this subsection requires not only "control" but also some *proprietary interest* in the liable premises. But in this case, the very terms that appellant uses to describe Bechtel's status exclude that possibility. According to appellant—and the relevant construction contracts between Bechtel and PEPCO—Bechtel exercised "complete control *of the project*" at each location, not control of *the premises themselves*. (Emphasis added.) Bechtel's rights were thus limited to the scope of its contractual duties to perform construction work; the contracts did not give Bechtel a possessory or proprietary interest in PEPCO's properties.[5]

■ We further note that, as Bechtel rightly argues, the language and construction of subsection (d)(2)(i) mirrors the common-law principle of strict premises liability for abnormally dangerous activities. This common law liability requires "that the defendant be the owner, tenant or an occupier of the land in the sense that his occupancy is possession taken for the purpose of exercising control of the land." *Toy v. Atl. Gulf & Pac. Co.*, 176 Md. 197, 213, 4 A.2d 757 (1939). In the time since *Toy v. Atlantic Gulf,* the Court of Appeals "has refused to extend the abnormally dangerous activity doctrine to instances in which the alleged tortfeasor is not an owner or occupier of land," *Kelley v. R.G. Indus., Inc.*, 304 Md. 124, 133, 497 A.2d 1143 (1985), and there is no reason to presume that the General Assembly manifested any different intent with the statutory distinction in subsection (d)(2)(i). *See Cutlip v.*

---

5. It may be that the scope of one's rights to use a property, while theoretically limited, are so broad as to constitute ownership. Thus, liability may have attached if Bechtel's contract creating rights to use PEPCO's land was so broad as to make Bechtel a *de facto* lessor. But in that case the contract would demonstrate the hallmarks of a possessory interest, such as rights to profit or benefit from the property, the right to exclude others, the right to dispose of the property as Bechtel sees fit. (The right to profit would obviously exclude Bechtel's payments from PEPCO for the work it performed, which would be akin to a landlord paying its tenant to reside on the property. That situation seems absurd because it would be, so long as the primary interest in the property remains with the landlord.)

*Lucky Stores, Inc.*, 22 Md.App. 673, 683, 325 A.2d 432 (1974); ("[A]n *owner* may be liable for injuries to an employee of an independent contractor when the premises on which the contracted work is done remain under the *owner's* control and the injury arises out of an abnormally dangerous condition of the premises, of which condition the *owner* is chargeable with knowledge." (emphasis added))

Even if Bechtel had a sufficient possessory interest in the premises during their construction, appellant's argument fails because it did not have that interest *when the injury occurred.* By the express terms of § 5–108(e), "[a] cause of action for an injury described in this section accrues when the injury or damage occurs." And as the Court of Appeals explained in *Hilliard & Bartko Joint Venture v. Fedco Sys., Inc.*, 309 Md. 147, 162, 522 A.2d 961 (1987), the Statute of Repose incorporates the common law discovery rule of accrual: "[T]he language of present subsection (e), equating accrual with 'when the injury or damage occurs,' means when the injury or damage is discovered."[6] In the present case, Mr. Burns' injuries were discovered in 2009, thirty-eight years after Bechtel relinquished whatever control it had over the PEPCO sites in dispute.

For these reasons, Bechtel was not in actual possession and control of the PEPCO property when the injury occurred, and CJ § 5–108(d)(2)(i) does not exclude it from the general Statute of Repose.

---

**6.** Appellant argues that Bechtel's interpretation of § 5–108(e) "repeals the discovery rule as it has been applied in Maryland for decades." But it seems that this is true of *appellant's* position, not of Bechtel's. According to appellant, Bechtel controlled the PEPCO properties only when Mr. Burns was exposed, and not when his injuries were diagnosed. Thus, if appellant is correct that Bechtel was "in actual possession and control of the property as owner, tenant, or otherwise when the injury occurred," this could only mean that the injury occurred upon exposure, rather than upon its discovery. In addition to contradicting appellant's apparent position as to the discovery rule in § 5–108, accrual at exposure would place the present suit far outside the three-year statute of limitations in CJ § 5–101.

## II.

Appellant also argues that Bechtel is not shielded from liability by the Statute of Repose because the asbestos materials that allegedly caused her husband's illness and death were not "improvements" within the meaning of CJ § 5–108(a). Appellant does not dispute that the asbestos insulation at the PEPCO facilities were improvements upon installation. Instead, appellant argues that, in terms of the Statute of Repose, "improvements" does *not* include materials defined elsewhere in the Statute as "asbestos dust or fibers which are shed or emitted prior to or in the course of the affixation, application, or installation of the asbestos or the product that contains asbestos to an improvement to real property." CJ § 5–108(d)(2)(ii). But as we now explain, this language is part of an *exception* (for certain actors) to the Statute of Repose, which implies that its subject ordinarily falls *within* the Statute's protections. Thus, because Bechtel and the asbestos products in this case do *not* fall within subsection (d)(2)(ii)'s *exception* to repose, Bechtel remains shielded by the statute and was entitled to summary judgment.

We construe the Statute of Repose according to the following rubric, as the Court of Appeals did in *Rose v. Fox Pool Corp.*, 335 Md. 351, 358–59, 643 A.2d 906 (1994):

> ... The cardinal rule of statutory construction is to effectuate and carry out legislative intent. Every statute is enacted to further some underlying goal or purpose—to advance some interest, to attain some end—and must be construed in accordance with its general purposes and policies. When called upon to construe a particular statute, we begin our analysis with the statutory language itself since the words of the statute, construed according to their ordinary and natural import, are the primary source and most persuasive evidence of legislative intent. The statute must be construed as a whole so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.

> When the language of a statute is plain and clear and expresses a meaning consistent with the statute's apparent purpose, no further analysis of legislative intent is ordinarily required....

(Internal citations and quotation marks omitted.) Here, we look to the statute's legislative history only incidentally, and it confirms that appellant's argument must be rejected because it renders the relevant part of subsection (d)(2)(ii) superfluous and nugatory.

As originally enacted, CJ § 5–108(a) did not specify whether, for its limited purposes, "improvements" entitled to repose included the component parts that would later *become* those improvements. Subsection (a) also did not specify a type of defendant entitled to repose, and any argument that its scope is unlimited was laid to rest in 1979. That year, the Maryland General Assembly added subsection (b), which created a more favorable ten-year statute of repose for architects and professional engineers *only*. See 1979 Laws of Maryland, Ch. 698; *Rose v. Fox Pool Corp.*, 335 Md. at 366–67, 643 A.2d 906.

With one class of actor now carved out of the Statute of Repose, questions quickly arose concerning other types of defendants:

> During 1988 and 1989, the question of whether § 5–108(a) applies in actions against product manufacturers became a critical issue in a number of suits seeking damages for personal injury and property damage from manufacturers of construction materials containing asbestos. In every one of those cases, § 5–108(a) was held to bar claims for damages filed against the manufacturers of asbestos whose products had been incorporated into buildings which had been completed over 20 years prior to the discovery of the plaintiffs' injuries.

*Rose v. Fox Pool Corp.*, 335 Md. at 367, 643 A.2d 906.[7]

In response to these rulings, the Maryland General Assembly amended CJ § 5–108 so that repose does *not* extend to "a

---

**7.** *See First United Methodist Church v. U.S. Gypsum Co.*, 882 F.2d 862 (4th Cir.1989), *cert. denied*, 493 U.S. 1070, 110 S.Ct. 1113, 107 L.Ed.2d

manufacturer or supplier for damages for personal injury or death caused by asbestos or a product that contains asbestos, [if] the injury or death results from exposure to asbestos dust or fibers which are shed or emitted prior to or in the course of the affixation, application, or installation of the asbestos or the product that contains asbestos to an improvement to real property[.]" *Rose v. Fox Pool Corp.*, 335 Md. at 367–70, 643 A.2d 906; CJ § 5–108(d)(2)(ii). Because the apparent intent of this amendment was to create an exception to the Statute of Repose, it stands to reason that those within its ambit previously enjoyed repose under subsection (a). Stated differently, if it was *necessary* to enact this subsection and thereby remove from the statute of repose harm caused by asbestos "shed or emitted prior to or in the course of the affixation, application, or installation of" an improvement, then it is because such harm had previously fallen *within* the general repose of subsection (a).

Furthermore, if—as appellant argues—subsection (a) did *not* previously extend to such fibers, then the newly-added subsection (d)(2)(ii) could simply have excluded all product manufacturers and suppliers from repose. In other words, if appellant's definition of "improvements" is correct, then it was *not necessary* to specify a product's status in the construction process when enacting subsection (d)(2)(ii). We must assume, however, that the General Assembly did not use superfluous language, so the language of (d)(2)(ii) quoted above was necessary to create an exception to repose, and appellant's premise must therefore be incorrect.

Finally, while appellant cites a number of cases from other jurisdictions holding that "improvements" as used in various

---

1020 (1990); *In re Personal Injury Asbestos Cases*, Circuit Court for Baltimore City (Levin, J., November 1, 1989); *Baltimore County, Maryland v. Keene Corp. et. al.*, Circuit Court for Baltimore County, Case No. 84–CG–1776 (Fader, J., April 12, 1988); *State of Maryland v. Keene Corp. et. al.*, Circuit Court for Anne Arundel County, Civil Action No. 11–8600 (Thieme, J., June 9, 1989); *Mayor and City Council of Baltimore v. Keene Corp. et. al.*, Circuit Court for Baltimore City, Case No. 84268068/CL25639 (Davis, J., June 2, 1989).

Statutes of Repose excludes materials destined to be incorporated in improvements, none of them addresses a similar judicial and legislative history to ours. *See Willis v. Raymark Indus., Inc.,* 905 F.2d 793 (4th Cir.1990) (interpreting Virginia's statute of repose); *Buttz v. Owens–Corning Fiberglas Corp.,* 557 N.W.2d 90 (Iowa 1996); *Olsen v. Oklahoma Gas & Elec. Co.,* 288 P.3d 940, *cert. denied, reh'g denied* (Okl.Civ. App.2012); *White v. CBS Corp.,* 996 S.W.2d 920 (Tex.App. 1999).

■ As our discussion has shown, the enactment of the specific exceptions contained in CJ § 5–108(d)(2)(ii) demonstrates by contrast that subsection (a) does *not exclude* from repose "damages for personal injury or death caused by asbestos or a product that contains asbestos, [if] the injury or death results from exposure to asbestos dust or fibers which are shed or emitted prior to or in the course of the affixation, application, or installation of the asbestos or the product that contains asbestos to an improvement to real property." With no other reason to exclude Bechtel and the alleged harm in this case from the statute of repose, appellant's claims were time-barred by CJ § 5–108(a), and we therefore affirm the trial court's order awarding summary judgment to Bechtel.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**